UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1293(DSD/SRN)

Taylor Corporation,

Plaintiff,

v.

**AMENDED ORDER**

Four Seasons Greetings LLC,

Defendant.

Laura J. Hein, Esq., Gina M. Tiefenthaler, Esq. and Gray Plant Mooty Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

James B. Sheehy, Esq., Sheehy Law Office, 247 Third Avenue South, Suite 6, Minneapolis, MN 55415, counsel for defendant.

This matter is before the court on plaintiff's motion for a preliminary injunction. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion.

**BACKGROUND**

Plaintiff Taylor Corporation ("Taylor") creates, produces and sells greeting cards bearing original decorative designs. Plaintiff owns copyrights for many of its greeting card designs, including those for the six greeting cards in dispute in this

FILED 11-26-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ________
Deputy Clerk's Initials ______

matter. These six designs are entitled "Wreath with Verse," "Pencil Sketch Farm," "Colored Presents," "Ribbon of Flags Around Globe," "Three World of Thanks Globe Ornament" and "Thanksgiving Cart" (collectively, "plaintiff's designs"). In compliance with the copyright laws of the United States, plaintiff registered each of these designs with the United States Copyright Office on June 25, 2001 and August 3, 2001 and received United States Certificates of Registration Nos. 1,083,918, 1,083,919, 1,0083,920, 1,088,498, 1,088,499 and 1,088,497. (Schmitt Aff. ¶ 5.)

Plaintiff asserts that defendant Four Seasons Greetings LLC ("Four Seasons") is violating federal copyright laws by producing and selling certain greeting cards bearing designs (collectively, "defendant's designs") that are substantially similar to plaintiff's designs. Defendant, which competes directly with plaintiff for customers and sales, contends that its cards were not copied from any of plaintiff's designs. Defendant further asserts that the cards in dispute involve themes, techniques and concepts that are common in the industry and claims that plaintiff cannot monopolize them. Defendant also claims that plaintiff is improperly attempting to monopolize individual artist's styles. Toward this end, defendant emphasizes that four of plaintiff's six disputed designs were created by artists who later went to work for

defendant. Those artists, Frank Stockmal, Aleta Brunettin and Michael Shelton, then designed four of the allegedly infringing cards for defendant.

Plaintiff demanded that defendant cease and desist from the further production and sale of defendant's designs, but defendant refused to comply with that demand. Plaintiff contends that defendant's actions with regard to defendant's designs were and continue to be without plaintiff's permission, license, or consent. As a result, plaintiff requests the court to issue a preliminary injunction. For the reasons stated, the court grants plaintiff's motion for a preliminary injunction.

**DISCUSSION**

In evaluating a motion for a preliminary injunction, the court considers the four factors that the Eighth Circuit set forth in Dataphase Sys., Inc. v. CL Sys., Inc.: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and the harm that the relief would cause to the other litigants; (3) the likelihood of the movant's success on the merits; and (4) the public interest. 640 F.2d 109, 112-114 (8th Cir. 1981). The court weighs these four factors to determine whether injunctive relief is warranted. See id. at 113; West Publ'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir.

1986), cert. denied, 479 U.S. 1070, 107 S. Ct. 962, 93 L. Ed.2d 1010 (1987).

While no one factor is determinative, the likelihood of success on the merits predominates in a copyright infringement case. E.F. Johnson Co. v. Uniden Corp. of Am., 623 F. Supp. 1485, 1491 (D.Minn. 1985)(citing 3 M. Nimmer, Nimmer on Copyright, § 14.06[A] n. 6.1). Once the movant has established the likelihood of success on the merits, irreparable harm is presumed. West Publ'g, 799 F.2d at 1229. Accordingly, the court first turns to an analysis of plaintiff's probability of success on the merits of its copyright infringement claim.

**A. Likelihood of Success on the Merits**

To prevail on a copyright infringement claim, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of its copyrighted work by defendant. Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992). To establish ownership of a valid copyright, the plaintiff must prove that the material is original, that it can be copyrighted and that all statutory formalities have been complied with. Lakedreams v. Taylor, 932 F.2d 1103, 1107-08 (5th Cir. 1991). To establish copying, the plaintiff generally must show that the defendant had access to the material and that there is a substantial similarity between the two works. Moore, 972 F.2d at 941-42.

**1. Validity of the Copyright**

A certificate of registration constitutes *prima facie* evidence of the validity of a copyright and of the facts, including ownership and existence, stated in the certificate. Tonka Corp. v. Tsaisun Inc., 1986 WL 29980, *12 (D. Minn.)(Magnuson, J.), citing 17 U.S.C. § 410(c)(citations omitted). Here, plaintiff registered each of plaintiff's designs with the United States Copyright Office on June 25, 2001 and August 3, 2001, and introduced into evidence United States Certificates of Registration Nos. 1,083,918, 1,083,919, 1,0083,920, 1,088,498, 1,088,499, and 1,088,497. (Schmitt Aff. ¶ 5.) These certificates are *prima facie* evidence of the validity of plaintiff's copyrights and the facts stated in the certificates, including ownership. Plaintiff is therefore entitled to a rebuttable presumption that the copyrights for plaintiff's designs are valid and subsisting. See Janel Russell Designs, Inc. v. Mendelson & Assocs. Inc., 114 F. Supp. 2d 856, 863 (D. Minn. 2000)(finding that plaintiff is entitled to rebuttable presumption that the copyright is valid because plaintiff presented a certificate of registration)(citing 17 U.S.C. § 410(c)).

Defendant, however, contests the scope of protection that these copyright certificates provide to plaintiff. In particular, defendant asserts that the doctrines of merger and *scenes a faire* apply to negate plaintiff's copyrights. Under the merger doctrine, a court will not protect a copyrighted work from infringement if

the idea underlying the copyrighted work can be expressed in only one way. Janel Russell Designs, Inc., 114 F. Supp.2d. at 865. Under the related doctrine of *scenes a faire*, a court will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea rather than from the creative efforts of the designer. Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000).

The Ninth Circuit Court of Appeals has noted that "there is some disagreement among courts as to whether these two doctrines figure into the issue of copyrightability or are more properly defenses to infringement." Id. The Eighth Circuit has not addressed the issue of whether the merger and *scenes a faire* analysis affects copyright validity, but Nimmer counsels that these doctrines are best applied as defenses to infringement, rather than challenges to the validity of the copyright itself. 4 M. Nimmer & D. Nimmer, *Nimmer on Copyrights*, §§ 13.03[B][3], at 13-69 through 70 and 13.03[B][4], at 13-73 (2001); see also Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991)(en banc)(holding that the merger doctrine relates to infringement, not to copyrightability); Reed-Union Corp. v. Turtle Wax, Inc., 77 F.3d 909, 914 (7th Cir. 1996)(explaining why the doctrine of *scenes a faire* is separate from the validity of a copyright); accord Ets-Hokin, 225 F.3d at 1082. Regardless of when the analysis occurs, the court believes that neither doctrine applies in this case.

The merger doctrine is based on 17 U.S.C. § 102(b), which states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodies in such work." Under the merger doctrine, copyright protection may be denied where the idea is inseparably tied to the expression of that idea. Janel Russell Designs, Inc., 114 F. Supp.2d at 865; 4 Nimmer § 13.03[B][3]. Similarly, under the *scenes a faire* doctrine, copyright protection may be precluded where the work contains features which are indispensable or standard for such a work. Ets-Hokin, 225 F.3d at 1082. The rationale behind both doctrines is that there should be no monopoly of an underlying idea. Id., Thimbleberries, Inc. v. C&F Enters., Inc., 142 F. Supp. 2d. 1132, 1138 (D. Minn. 2001).

In Thimbleberries, Inc. v. C&F Enterprises, Inc., plaintiff, a quilt and fabric designer, brought a copyright infringement action against defendant, a table linen manufacturer, claiming that defendant copied its quilt pattern depicting a Christmas wreath adorned with a bow. 142 F. Supp. 2d. at 1136. In response to plaintiff's motion for a preliminary injunction, defendant argued that the protection of plaintiff's quilted pattern was limited or even precluded under the doctrines of merger and *scenes a faire*. Id. at 1137. Plaintiff's counsel, however, presented at least nine

other wreath patterns for quilts. Id. at 1138. The court found that each of these nine other patterns was markedly different from the pattern plaintiff sought to protect. Id. For that reason, the court concluded that the merger and *scenes a faire* doctrines did not apply and that plaintiff satisfied the minimal level of creativity required to obtain copyright protection. Id.

Here, as in Thimbleberries, Inc., plaintiff easily demonstrates that the expression it seeks to protect on each of its greeting cards is only one of the many ways to express the underlying idea. Plaintiff's counsel submitted an affidavit demonstrating ten other ways to express the idea contained in "Wreath with Verse" (Hein Aff. Ex. M.), twenty-four other ways to express the idea contained in "Pencil Sketch Farm" (Hein Aff. Ex. N), twenty-six other ways to express the idea contained in "Colored Presents" (Hein Aff. Ex. O), nineteen other ways to express the idea contained in "Ribbon of Flags Around Globe" (Hein Aff. Ex. P), thirty-three other ways other ways to express the idea contained in "Three World of Thanks Globe Ornament" (Hein Aff. Ex. Q) and fifteen other ways to express the idea contained in "Thanksgiving Cart" (Hein Aff. Ex. R).

As in Thimbleberries, Inc., this proliferation of varied patterns provides more than sufficient evidence that plaintiff has utilized the minimal degree of creativity required to obtain copyright protection. Feist Publ., Inc. v. Rural Tel. Serv. Co.,

499 U.S. 340, 111 S. Ct. 1282, 113 L.Ed.2d 358 (1991)(quoting Nimmer § 1.08[C][1])("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be."). Moreover, this variety of greeting cards reveals that plaintiff's particular arrangement is not at all compelled by the underlying idea. For this reason, the court must reject defendant's contention that the merger or *scenes a faire* doctrines apply in this case. Cf. Ellison Educ. Equip., Inc. v. Tekservices, Inc., 903 F. Supp. 1350, 1360 (D. Neb. 1995)(holding that candy cane design of die used in paper cutting machine was not entitled to copyright protection because there were limited ways in which to depict a candy cane for a paper cutting machine and still be able to express the idea). Accordingly, the court concludes that for purposes of obtaining a preliminary injunction, plaintiff has established the validity of its copyright.

**2. Copying by Defendants**

Having established its ownership of a valid copyright, plaintiff must also prove that defendants copied its protected mark. Plaintiff may demonstrate copying by direct evidence of copying. Nelson v. PRN Productions, Inc., 873 F.2d 1141, 1142 (8th Cir. 1989). Because direct evidence of copying is rare, see, e.g., Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988)("copiers are

rarely caught red-handed"), a plaintiff can provide circumstantial evidence establishing that the defendant had access to the copyrighted material and that the accused work is substantially similar to the copyrighted work. Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977); U.S. v. Washington Mint, LLC, 115 F. Supp. 2d 1089, 1098 (D. Minn. 2000)(citing Moore, 972 F.2d at 941-42); Nelson, 873 F.2d at 1142. In this case, plaintiff provides persuasive circumstantial evidence that defendant copied each of plaintiff's six designs by establishing access and substantial similarity.

### 3. Access

To establish access, plaintiff must show that defendant had a "reasonable possibility" of viewing the copyrighted work. Janel Russell, 114 F. Supp. 2d. at 864; Moore, 972 F.2d at 942. Neither party disputes that defendant had direct access to at least four of plaintiff's six designs because the three artists who created those designs for plaintiff subsequently created the corresponding allegedly infringing designs for defendant. In particular, Frank Stockmal created plaintiff's "Colored Presents" card and also created Four Season's "Happy Holidays" card. (Stockmal Aff. ¶5.) Michael Shelton created plaintiff's "Ribbon of Flags Around Globe" card with Stockmal's oversight (Shelton Aff. ¶6), while Stockmal created defendant's "Globe with Streamers" card. (Stockmal Aff. ¶5.) Michael Shelton created both plaintiff's "Three World of

Thanks Globe Ornament" card and defendant's "Bright New World" card. And, Aleta Brunettin created plaintiff's "Thanksgiving Cart" card as well as defendant's "Pumpkin Wagon" card. (Brunettin Aff. ¶5-7.) Moreover, in light of the parties' relationship as direct competitors and defendant's close familiarity with plaintiff and plaintiff's original greeting card designs, (Schmitt Aff. ¶ 7), defendant clearly had a "reasonable possibility" of viewing plaintiff's other two designs, "Wreath with Verse" and "Pencil Sketch Farm."

**4. Substantial Similarity**

The Eighth Circuit endorses a two-step approach in determining substantial similarity. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). First, an "extrinsic" analysis is performed to determine whether the general idea of the two works is substantially similar. Id., Moore, 972 F.2d at 945; Krofft Television, 562 F.2d at 1164. In applying the extrinsic test, the court considers criteria such as the type of artwork involved, the materials involved, the subject matter and the setting for the subject. Krofft Television, 562 F.2d at 1164. The parties do not dispute that plaintiff's designs and defendant's designs share similar ideas, representing common greeting card themes. In fact, defendant states that "the cards in dispute in this case clearly involve common themes, techniques, and concepts which are commonly expressed throughout the industry." (Def.'s Mot. Opp'n Pl.'s Mot.

Prelim. Inj. at 2-3.) Thus, the court concludes that the designs in question satisfy the extrinsic step of the substantial similarity test because they share similar ideas, themes and techniques.[1]

In cases such as this one, where the extrinsic elements of the greeting cards are unquestionably similar, the court must then perform an "intrinsic" analysis to determine whether there is similarity of expression. Id., Hartman, 833 F.2d at 120. The intrinsic test is a subjective test, where the court examines the two works "to ascertain if they are so dissimilar that ordinary, 'reasonable minds [can]not differ as to the absence of substantial similarity in expression.'" Hartman, 833 F.2d at 120 (quoting Litchfield v. Spielberg, 739 F.2d 1352, 1355-56)(9th Cir. 1984). Judge Learned Hand described the test as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). Put another way, the critical question to

---

[1] Defendant asserts that plaintiff's copying claim is barred because the elements of plaintiff's designs do not constitute original expressions, but rather represent ideas, which are not protected under the copyright law. The court finds that defendant's reliance on the idea/expression dichotomy is misplaced because plaintiff does not claim that the constituent details of each design are themselves copyrightable elements of its designs. Instead, plaintiff only seeks protection for the unique expressions of the basic underlying ideas and theme found in plaintiff's designs.

consider is "whether the accused work has captured the 'total concept and feel' of the copyrighted work.'" Animal Fair, Inc. v. Amfesco Indus., Inc., 602 F. Supp. 175, 188 (D. Minn. 1985)(citing Atari, Inc. v. North Am. Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir.), cert. denied 459 U.S. 880 (1982)).

Applying this intrinsic analysis, the court finds substantial similarity between plaintiff's designs and defendant's designs. While the court notes that there are some differences between plaintiff's and defendant's designs, these differences do not defeat plaintiff's claim of substantial similarity because complete identity is not required. As the court in Chuck Blore & Don Richman, Inc. v. 20/20 Adver. Inc., stated: "it is the presence of substantial similarities rather than differences which determines whether infringement exists. The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of plaintiff's work." 674 F. Supp. 671, 680 (D. Minn. 1987)(citations omitted).

**a. Wreath with Verse**

Defendant captured the "total concept and feel" of plaintiff's "Wreath With Verse" design. (Hein Aff. Ex. A.) A reasonable observer would easily recognize the similarities between plaintiff's "Wreath With Verse" and defendant's wreath design. (Hein Aff. Ex. G.) Each wreath design is set in a shade of cream

with a thin, gold foil border around it. In both designs, verse is printed on the inside of the wreath in gold foil with similar script. Moreover, both wreaths are composed of green holly leaves and spruce, with red berries and gold foil balls.

**b. Pencil Sketch Farm**

A reasonable observer also would clearly recognize the numerous similarities between the plaintiff's "Pencil Sketch Farm" design (Hein Aff. Ex. B) and defendant's farm sketch design, (Hein Aff. Ex. H). Both cards have an unusual "wrap around" feature, with a design that spreads from the front of the card to the back. In both farm scenes, an old-fashioned well dominates the foreground at the right. Both cards portray barren winter trees and evergreen trees. A barren tree, substantially similar in shape and size, appears in both scenes just to the right of the longitudinal middle-line of the scene. The base of each barren tree is, approximately, at the mid-point of the middle-line. The apex of each of the trees is similarly placed in both scenes, an inch to the right of the middle-line and a half inch from the top edge of the greeting card. Moreover, both cards use accents of bright green and bright red to draw the viewer's attention to the well and farmhouse. Thus, defendant captured the "total concept and feel" of plaintiff's design.

**c. Colored Presents**

Likewise, a reasonable observer would see the substantial similarities between plaintiff's "Colored Presents" design, (Hein Aff. Ex. C) and defendant's colored boxes design (Hein Aff. Ex. I). Both cards portray a line of boxes placed in a horizontal "zig-zag" arrangement on the lower half of the front of the greeting card. Each box is topped with a raised, gold foil bow. The box colors on both cards include similar shades of red, purple, yellow, blue and green and both sets of boxes are set against a white background. Even the brush stokes in both cards are similar. Here, too, the defendant captures the "total concept and feel" of plaintiff's design.

**d. Ribbon of Flags Around Globe**

Plaintiff's "Ribbon of Flags Around Globe" design (Hein Aff. D) and defendant's globe with flags design (Hein Aff. Ex. J) also share many similarities such that a reasonable person would conclude that they are substantially similar. In both designs a globe is printed in gold foil, complete with longitude and latitude lines, against a light, plain background. In both globe designs, the Americas are near the longitudinal center and the globe in both cards is surrounded by a flowing, furled ribbon on which the colorful flags of several countries appear. Some of the flags most

prominently displayed on the ribbon in both designs are those of the United States, Canada, Great Britain, Belgium, and Bangladesh.

In each design, a portion of the ribbon floats horizontally across South America at the latitudinal center of the globe. The faces of the ribbon are nearly hidden at one point where the edge of the ribbon is exposed. And, both cards offer the message of "Seasons Greetings" on the front of the cards. Although defendants did not include doves and a red bow in its design, the similarities in expression between the two cards illustrate that defendant captured the "total concept and feel" of plaintiff's "Ribbon of Flags Around Globe" design. See Chuck Blore & Don Richman, Inc., 674 F. Supp. at 680 (suggesting that complete identity is not required).

**e. Three World of Thanks Globe Ornament**

Defendant's globe ornament design also captures the "total concept and feel" of plaintiff's "Three World of Thanks Globe Ornament" design. (Hein Aff. Ex. E.) Defendant has significantly copied the first (left) globe ornament in plaintiff's original design. Both globe ornaments depict North America and South America. In both globe ornaments, the world is painted in similar colors, namely dark green, light green, dark blue, medium blue, sky blue and a small amount of sunflower yellow. Only a small portion of both globes are left white. Each globe is capped with gold foil fastner resembling a tuffet and the gold foil ribbon is strung

through the eyelet on the fastner and tied a bow. Based on these common features, a reasonable observer would conclude that these two designs share a substantial similarity.

**f. Thanksgiving Cart**

Finally, a reasonable observer would find plaintiff's "Thanksgiving Cart" design (Hein Aff. Ex. F) and defendant's cart design (Hein Aff. Ex. L) to be substantially similar. Both cards depict grapes, pumpkins, Indian corn, red and yellow apples, and a single multi-colored, speckled gord. In both designs, a rustic brown wheelbarrow or a cart is piled high with produce and produce is scattered about the foreground of both scenes. The "total concept and feel" of both cards is therefore similar.

**B. Remaining Dataphase Factors**

Because plaintiff has made a prima facie showing of copyright infringement, plaintiff is entitled to a presumption of irreparable harm. West Publ'g, 799 F.2d at 1229.

With respect to the balance of hardships between the movant and nonmovant, this factor is generally regarded as insignificant in a copyright infringement action. E.F. Johnson, 623 F. Supp. at 1491. In this case, the economic harm posed to plaintiff by the unlicensed production and sale of its designs is obvious and the court finds that any harm to defendant pales in comparison. Indeed, "[a] willful infringer which seeks to profit by copying others' creative ideas should not be heard to complain that its

interest will be disturbed by an injunction." Id. at 1504 (citing Helene Curtis Indus. v. Church & Dwight Co., 560 F.2d 1325, 1333 (7th Cir. 1977), cert. denied, 434 U.S. 1070, 98 S. Ct. 1252, 55 L.Ed.2d 772 (1978)).

Finally, regarding the public interest, courts have long recognized that:

> [i]t is virtually axiomatic that the public interest only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work. The interest which the copyright laws are designed to serve is the public interest in encouraging "individual effort and creativity by granting valuable enforceable rights." A preliminary injunction enjoining copyright infringement serves the public interest by furthering the goals of individual effort and fair competition.

E.F. Johnson, 623 F. Supp. at 1491 (quoting Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d 1983)); Atari, Inc., 672 F.2d at 620)(other citations committed).

In sum, analysis of each Dataphase factor counsels in favor of the issuance of a preliminary injunction. Accordingly, the court grants Taylor's motion for preliminary injunction.

**C. Bond**

Under Federal Rule 65(c), the court is required to determine the amount of security that the preliminary injunction movant must give "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully

enjoined." The court concludes that a bond of $205,000 is appropriate in this case.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for a preliminary injunction is granted; and

2. Pursuant to Federal Rule 65(c), this injunction will not take effect until plaintiff posts a bond or provides other security in the amount of $205,000.

Dated: November 26, 2001.

David S. Doty, Judge
United States District Court