UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1293(DSD/SRN)

Taylor Corporation,

Plaintiff,

v.

Four Seasons Greetings LLC,

Defendant.

**AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT**[1]

Laura J. Hein, Esq., Gina M. Tiefenthaler, Esq., and Gray Plant Mooty Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

James B. Sheehy, Esq., Sheehy Law Office, 247 Third Avenue South, Suite 6, Minneapolis, MN 55415, counsel for defendant.

## PROCEDURAL BACKGROUND

This copyright infringement action was bifurcated for disposition by the court into a hearing on the issues surrounding ownership of the copyrights and an advisory jury trial on the issues of infringement. The infringement issues were tried during the week beginning August 4, 2003, with the jury reaching its conclusions on August 8, 2003. Thereafter, and on October 14, 2003, the court tried the issues of ownership.

---

[1] The word "willfully" was deleted from paragraph 63.

FILED DEC 11 2003
Richard D. Sletten, CLERK
Judgment Ent'd. ________
Deputy Clerk's Initials ______

Based on the evidence received during the two trials, the advisory verdict of the jury, the submissions by both parties, the files and other proceedings herein, the court makes the following findings of fact, conclusions of law and order for judgment:

## FINDINGS OF FACT

### Ownership of Copyrights

1. Plaintiff Taylor Corporation and defendant Four Seasons Greetings, LLC, are companies engaged in the business of creating, printing and selling greeting cards.

2. On April 14, 2000, plaintiff entered into a contract with AP&P Manufacturing, Inc. ("AP&P Manufacturing"), in connection with a bankruptcy filed by AP&P Manufacturing, American Pad & Paper Company and other related companies. The bankruptcy proceedings, captioned In re American Pad & Paper Company, et al., Case No. 00-00066, were held in the United States Bankruptcy Court for the District of Delaware. Under the contract, plaintiff agreed to purchase, and AP&P Manufacturing to sell, certain assets of the debtors involved in the bankruptcy.

3. Plaintiff's Exhibit 133, received at trial, is a true and accurate memorialization of the contract entered into between plaintiff and AP&P Manufacturing.

4. Exhibit 133 incorporates by reference a document entitled "Schedule 1.1(d)." Exhibit 134 is a true, accurate and complete copy of "Schedule 1.1(d)."

5. "Schedule 1.1(d)" is a list of items of intellectual property to be sold by AP&P Manufacturing and purchased by plaintiff under the contract.

6. Included in the items of intellectual property listed on "Schedule 1.1(d)" are six greeting cards entitled "Colored Presents,'" "Ribbons of Flags Around Globe," "Three Worlds of Thanks Globe Ornament,'" "Pencil Sketch Form," "Thanksgiving Cart" and "Wreath With Verse."[2] True and accurate copies of these greeting cards were received at trial as Plaintiff's Exhibits 1, 3, 5, 7, 9 and 11, respectively.

7. On April 20, 2000, the Delaware Bankruptcy Court issued an order approving the contract entered into between plaintiff and AP&P Manufacturing. Plaintiff's Exhibit 135 is a true, accurate and complete copy of the court's order. The order has not been stayed, appealed or otherwise attacked in any court.

8. On May 9, 2000, the debtors in the bankruptcy proceeding executed a "Bill of Sale and Assignment" in favor of plaintiff. Plaintiff's Exhibit 136 is a true, accurate and complete copy of that document.

---

[2] The names have been slightly altered for purposes of consistency throughout this opinion.

9. Under the contract, plaintiff paid six million dollars ($6,000,000) for the purchase of the debtors' assets.

10. On or about June 22 and July 31, 2001, plaintiff's counsel, Ms. Laura Hein, prepared six Form VA applications to register each of the designs with the United States Copyright Office. The applications were prepared in anticipation of this infringement litigation. Plaintiff's Exhibits 127-132 are true, accurate and complete copies of the registration certificates issued by the Copyright Office pursuant to the applications.

11. Hein misidentified "Taylor Corporation" as the author of the designs on each of the six Form VA applications. The court finds that the errors were the result of inattention and neglect. The court finds no evidence that the misstatements were intentional or purposeful.

12. On August 15, 2003, Hein prepared and filed with the Copyright Office six Forms CA to correct the errors made on the six Forms VA and to supplement plaintiff's registration of the designs. Plaintiff's Exhibits 138-143 are true, accurate and complete copies of the Forms CA prepared by Hein.

13. Pursuant to Federal Rule of Evidence 201, the court takes judicial notice that the United States Copyright Office, pursuant to Hein's Form CA filings, has issued supplementary registration certificates for each of the designs.

**Plaintiff's Designs**

14. Taylor Corporation claims ownership of six original greeting card designs, titled "Colored Presents," "Ribbon of Flags Around Globe," "Three Worlds of Thanks Globe Ornament," "Pencil Sketch Farm," "Thanksgiving Cart" and "Wreath With Verse" (hereinafter, the "Taylor Designs").

15. The Taylor Designs were created between approximately 1997 and late 1999, by artists who were then employees of Creative Card Company, an affiliate of American Pad & Paper Company. Frank Stockmal created "Colored Presents" and "Ribbon of Flags Around Globe", Bernard Granger created "Wreath With Verse", Michael Shelton created "Pencil Sketch Farm" and "Three Worlds of Thanks Globe Ornament", and Aleta Brunettin created "Thanksgiving Cart."

16. All of the Taylor Designs were created under the active supervision and direction of Frank Stockmal, who was Creative Card Company's Creative Director from 1991 until October of 1999. Stockmal was involved in the design of all of the Taylor Designs, either by creating the design himself, or by assigning the design projects to other artists at Creative Card, supervising the designs, or collaborating with the other artists in the design process.

17. Stockmal also played a role in the selection of the designs for inclusion in each year's line.

18. At Creative Card Company, the Taylor Designs, like all of the designs that were selected for inclusion in the Creative Card Company line for the upcoming season, were displayed on the wall of a conference room easily accessible to all of the artists at Creative Card Company, including Stockmal, Shelton, and Brunettin. Because of its close proximity to their work areas, the Creative Card artists usually saw this wall every day. In addition, the artists were interested in which designs were selected to be sold.

19. William Dustin was Creative Card Company's president from 1984 until May or June of 1999, when he left Creative Card Company to establish a new company, defendant Four Seasons Greetings, LLC ("Four Seasons"). Four Seasons is engaged in the business of creating and selling greeting cards, with an emphasis on holiday cards. Four Seasons boasts a library of more than 5,000 different greeting card designs.

20. Over a period of a few days in late October or early November of 1999, Stockmal, Shelton and Brunettin resigned from Creative Card Company to join Dustin at Four Seasons.

**Defendant's Designs**

21. At their new employer Four Seasons, Stockmal, Shelton and Brunettin continued to design holiday greeting cards. Shelton and Brunettin reported to Stockmal, now the Creative Director at Four Seasons, just as they had reported to Stockmal when he was the Creative Director at Creative Card Company. Stockmal continued to

actively supervise and collaborate in the development of new designs at Four Seasons.

22. During 2000, Four Seasons offered and sold its greeting card designs to at least two of the customers to whom Creative Card Company had sold greeting cards in previous years, among them G. Neil and Myron Corporation.

23. After joining Four Seasons, Stockmal created Four Seasons' "Happy Holidays" and "Festive Wreath" designs; Shelton created Four Seasons' "Bright New World" design; Brunettin created Four Seasons' "Wishing Well" and "Pumpkin Wagon" designs; and Stockmal and Shelton collaborated in the creation of Four Seasons' "Globe With Streamers" design. All of these Four Seasons' designs (hereinafter, the "Four Seasons Designs") were either designed by Stockmal or were designed pursuant to his assignment or under his direction.

24. In 2001, Four Seasons manufactured and sold holiday greeting cards bearing the six Four Seasons Designs among the hundreds of other designs in its 2001 line.

25. Stockmal was aware of the Taylor Designs when the Four Seasons Designs were created because he had either created the Taylor Designs or they had been selected for the line while he was at Creative Card.

**Access**

26. Four Seasons had access to each of the Taylor Designs prior to creating the Four Seasons Designs. In particular, Stockmal created Taylor's "Colored Presents" card and also created Four Seasons' "Happy Holidays" card. Shelton, with Stockmal's oversight, created Taylor's "Ribbons of Flags Around Globe" card, and the two later collaborated to create Four Seasons' "Globe With Streamers" card. Shelton created Taylor's "Three Worlds of Thanks Globe Ornament" card and also created, as assigned by Stockmal, Four Seasons' "Bright New World" card. Brunettin created Taylor's "Thanksgiving Cart" card and also created Four Seasons' "Pumpkin Wagon" card.

27. With Stockmal's knowledge, and the other artists' knowledge of each other's works, Four Seasons had access to the other two Taylor Designs, "Wreath with Verse" and "Pencil Sketch Farm," prior to creating "Festive Wreath" and "Wishing Well" at Four Seasons.

**Substantial Similarities**

28. The Four Seasons Designs are substantially similar to the Taylor Designs. Specifically: Four Seasons' "Happy Holidays" is substantially similar to Taylor's "Colored Presents" design; Four Seasons' "Globe With Streamers" is substantially similar to Taylor's "Ribbon of Flags Around Globe" design; Four Seasons' "Bright New World" is substantially similar to Taylor's "Three

Worlds of Thanks Globe Ornament" design; Four Seasons' "Wishing Well" is substantially similar to Taylor's "Pencil Sketch Farm" design; Four Seasons' "Pumpkin Wagon" is substantially similar to Taylor's "Thanksgiving Cart" design; and Four Seasons' "Festive Wreath" is substantially similar to Taylor's "Wreath With Verse" design.

29. The Taylor Designs and the corresponding Four Seasons Designs share the same, or at least substantially similar, ideas.

30. There is substantial similarity in the expression of the ideas in the Taylor Designs and the corresponding Four Seasons Designs.

31. Four Seasons' "Happy Holidays" design is substantially similar to Taylor's "Colored Presents" design. (Pl.'s Exs. 1 & 2). For example, the style for both designs, loosely depicted presents with brush strokes to create the colors, is similar. (Tr. at 5.57.) The colors used and the paper choice are similar. (Id.) Embossing was used on both designs to give depth and show the brush stroke effect. (Tr. at 558.) The bows in both designs are rendered in a loose, whimsical style. (Id.) Both designs include gold refractive foil for the bows. (Id.) Both designs depict packages arranged in an uneven line across the lower part of the card, with the colors moving across the card. (Tr. at 559.) The total concept and feel of the designs is substantially similar.

32. Four Seasons' "Globe With Streamers" design is substantially similar to Taylor's "Ribbon of Flags Around Globe" design. (Pl.'s Exs. 3 & 4. For example, both designs feature a globe with an open grid pattern and solid continents. (Tr. at 554.) On both designs, the continents have a mottled texture, which is different from the grid pattern and is the result of a direction to the die maker in the manufacturing process. (Id.) In both designs, the globe is printed in gold foil, against a plain background. Both designs use the same off-white colored card stock. Both designs have a loose, flowing ribbon with flags. In both designs, the ribbons have gold foil edges. The flags are rendered in flat, bright colors. (Tr. at 555.) Both designs employ the same process to print the similar colors and gold foil. (Tr. at 556.) Both cards offer the message of "Seasons Greetings" on the front of the cards. Four Seasons' design captures the total concept and feel of Taylor's design.

33. Four Seasons' "Bright New World" design captures the total concept and feel of Taylor's "Three Worlds of Thanks Globe Ornament" design. (Pl.'s Exs. 5 & 6.) For example, the designs use the same type of paper stock. (Tr. at 545.) They incorporate the same colors. (Id.) Both cards feature a globe used as an ornament. (Tr. at 546.) Both designs feature the same artistic style, using a loose design that appears to be painted. (Id.) Both designs depict a shank at the top of the ornament, to which is

tied a gold metallic ribbon. (Tr. at 547.) The designs share a plain, colorless background. (Id.) Both designs use the wording "world of," with block font and all capital letters, located at the base of the card. (Id.) Both designs utilize a full color processing printing, and then a die with foils for the shank and the ribbons. (Tr. at 548.) Both designs feature refractive gold foil, rather than some other type of gold foil. (Id.) Based on these features, a reasonable observer would conclude that these two designs share a substantial similarity.

34. Four Seasons' "Wishing Well" design is substantially similar to Taylor's "Pencil Sketch Farm" design. (Pl.'s Exs. 7 & 8. For example, both designs prominently feature a wishing well, which is an unusual subject for a holiday card. (Tr. at 559-60.) The perspective of the wishing wells, which have minor differences, are similar, showing a side of the roof and a bucket full of holly in both. (Tr. at 560.) The wishing well is placed in a similar location in both designs. Both designs use a pencil sketch technique. Both designs are accented with bright green and red to draw the viewer's attention to the same portions of the cards. The angle of the lighting is, and therefore the shadows are, similar for the two designs. (Tr. at 560-66.) The shadows on both cards are cast up and to the right. (Tr. at 561.) Both cards portray barren winter trees and evergreen trees. Some of the similar trees are placed in similar locations in the two designs. Both cards

have a "wrap around" design, in which the design spreads from the front of the card to the back. A reasonable viewer would conclude that the Four Seasons wishing well card design captures the total concept and feel of the Taylor design.

35. Four Seasons' "Pumpkin Wagon" design is substantially similar to Taylor's "Thanksgiving Cart" design. (Pl.'s Exs. 9 & 10). For example, both designs depict fall produce, including grapes, pumpkins, Indian corn, red and yellow apples, and gourds. Both designs are triangular in composition. (Tr. at 549-50.) Both designs feature a rustic wheelbarrow or wagon in the center, holding some of the produce. Both designs feature similar embossed borders. (Tr. at 549.) Rather than more common metallic foils, both designs have a subtle embossing which gives a triple paneled effect. (Id.) Both designs also reflect similar processes for printing and embossing. (Tr. at 550-51.) In addition to the embossed borders, both designs feature embossing that raises the images on the card. (Tr. at 551.) Both designs use an additional step in the manufacturing process, with some type of varnish, to make the colored images less shiny. (Tr. at 552-53.) The total concept and feel of both designs is substantially similar.

36. Four Seasons' "Festive Wreath" design is substantially similar to Taylor's "Wreath With Verse" design. (Pl.'s Exs. 11 & 12). For example, both designs feature a wreath on an ecru background, with a drop shadow. (Tr. at 563.) Both wreaths are

tightly rendered, with red, green and some gold accents. Both include verse in the middle of the wreath, using a similar font. Both designs include holly and evergreen with red berries and gold balls. (Tr. at 564-65.) Four Seasons' design captures the total concept and feel of the Taylor Design.

37. The Four Seasons Designs were not the result of independent creation, but rather of copying.

38. Four Seasons' artists are talented and versatile artists, who are capable of creating, and do create, designs in widely varying styles using varying techniques, moods, colors and materials.

39. Stockmal created designs, and made assignments for designs to the other artists, based on his understanding of what greeting card designs were likely to sell well.

40. Stockmal, Shelton and Brunettin all denied copying any of the Taylor Designs.

41. It is unlikely that the similarities between the Four Seasons Designs and the Taylor Designs are the result of mere coincidence. The number of cards, each with its own substantial similarities to the corresponding Taylor Design, is powerful evidence that the similarities are the result of copying, rather than of independent creation.

**CONCLUSIONS OF LAW**

42. The court has jurisdiction over the parties. The court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1338.

43. In this infringement action, plaintiff is required to prove (1) its ownership of a valid copyright and (2) defendant's infringement upon that right. See 17 U.S.C. § 501(a); Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992).

44. The Copyright Act contemplates transfers of copyright ownership "by operation of law." 17 U.S.C. § 204(a). Courts and commentators have recognized that such transfers include transfers within the context of a bankruptcy. See, e.g., John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 186 F. Supp. 2d 1, 11 n.1 (D. Mass. 2002); Time, Inc. v. Kastner, 972 F. Supp. 236, 238 (S.D.N.Y. 1997); Brooks v. Bates, 781 F. Supp. 202, 205 (S.D.N.Y. 1991); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A][6] (2003). Transfers in bankruptcy do not run afoul of the Act's prohibition of involuntary transfers because the debtor impliedly consents to the transfer through his act of filing bankruptcy. See Kastner, 972 F. Supp. at 238; Nimmer, supra, § 10.04.

45. Plaintiff is the legal owner of the copyrights pertaining to the Taylor Designs. A bankruptcy court is empowered to order sale of property of the bankrupt estate. 11 U.S.C. § 363. The

April 20, 2000, order of the Delaware Bankruptcy Court vested Taylor with title to all the assets contemplated by plaintiff's contract with AP&P Manufacturing "free and clear of all ... liens, claims and encumbrances, under Sections 363(f) and 105 of the Bankruptcy Code." (Pl.'s Ex. 135 at 6.) The copyrights of the designs were thereby transferred to plaintiff "by operation of law" within the meaning of 17 U.S.C. § 204(a).

46. The six Forms VA filed by Laura Hein on behalf of plaintiff, though flawed, were sufficient to fulfill the registration requirement of 17 U.S.C. § 411. "[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." Urantia Found. v. Maaherra, 114 F.3d 955, 963 (9th Cir. 1997); see also Nimmer, supra, § 7.20[B]. There is no evidence that plaintiff intended to defraud the Copyright Office by representing itself as the author of the disputed designs. The Copyright Office, had it known the true author of the disputed designs and the manner in which the copyrights were transferred to plaintiff, would have granted the registration requests regardless. Indeed, the Copyright Office subsequently issued supplementary registrations for each of the disputed designs based upon the corrected information.

47. There being no evidence of misconduct by plaintiff, the equitable doctrine of unclean hands does not apply to bar plaintiff's infringement claim.

48. Copying by a defendant may be demonstrated either by direct evidence of copying or by circumstantial evidence establishing that the defendant had access to the copyrighted work and there is a substantial similarity between the two works at issue. Moore v. Columbia Pictures Indus., 972 F.2d 939, 941 (8th Cir. 1992); Nelson v. PRN Productions, Inc., 873 F.2d 1141, 1142 (8th Cir. 1989).

49. This court has used a two-step approach in determining substantial similarity. See Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). First, an "extrinsic" analysis is performed to determine whether the general ideas, themes and materials of the two works are substantially similar. (Id.); Moore 972 F.2d at 945. In cases such as this one, where the parties agree that their respective works share similar ideas, themes and techniques, an "intrinsic" analysis is performed to determine whether the parties' works share a similarity of expression. E.g., Hartman, 833 F.2d at 120.

As this court has previously observed in this case:

> Judge Learned Hand described the [intrinsic] test as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d

> 487, 489 (2d Cir. 1960). Put another way, the critical question to consider is "whether the accused work has captured the 'total concept and feel' of the copyrighted work." Animal Fair, Inc. v. Amftsco Indus., Inc., 602 F. Supp. 175, 188 (D. Minn. 1985) (citing Atari, Inc. v. North Am. Philips Consumer Electronics Corp., 672 F.2d 607, 614 (7th Cir.), cert. denied 459 U.S. 880 (1982)).

October 31, 2001 Order at 12-13.

50. The Eighth Circuit Court of Appeals recently endorsed the "total concept and feel" and "ordinary observer" tests when it affirmed this court's decision to grant a preliminary injunction in this case. Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1043 (8th Cir. 2003).

51. Analytical dissection is not called for when comparing similarity of expression. Hartman, 833 F.2d at 120-21.

52. Even a small amount of copying of the original work, if it is qualitatively significant, may be sufficient to be an infringement. Horgan v. Macmillan, Inc., 789 F.2d 157, 162 (2d Cir. 1986); Greenberg v. National Geographic Soc'y, 244 F.3d 1267, 1275 n.18 (11th Cir. 2001).

53. "Subconscious" or "innocent" copying is still copying. Fogerty v. Fantasy, Inc., 510 U.S. 517, 520 n.5 (1994); Proctor and Gamble Co. v. Colgate-Palmolive Co., 199 F.3d 74, 77 (2d Cir. 1999); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir. 1983).

54. An artist infringes when he or she copies his or her own work while another owns the copyright to it. Fogerty, 510 U.S. at 520 n.5; Modern Publishing A Division of Unisystems, Inc. v. Landoll, Inc., 841 F. Supp. 129, 134, withdrawn on other grounds, (S.D.N.Y.) 849 F. Supp. 22 (S.D.N.Y. 1994); supra, § 13.02[B] (acknowledging the "relatively unusual case in which the defendant at bar actually authored the work on which suit is based," and further noting that "access would appear to be a nonissue" in such cases).

55. Here, the "extrinsic" step of the test for determining substantial similarity is satisfied. It is undisputed that the Taylor Designs and Four Seasons' corresponding Designs share the same, or at least substantially similar, ideas.

56. Taylor has met its burden of proving the "intrinsic" step of the test for determining substantial similarity. Each of the Four Seasons Designs shares a similarity of expression with the corresponding Taylor Design such that an ordinary observer, unless he or she set out to detect the disparities, would be predisposed to overlook them, and regard their aesthetic appeal as the same. The Four Season Designs capture the "total concept and feel" of the corresponding Taylor Designs.

57. None of the Four Seasons Designs is identical to its corresponding Taylor Design The differences between the works do not, however, negate the conclusion that the Four Seasons Designs

capture the total concept and feel of the Taylor Designs. See Chuck Blore & Don Richman, Inc. v. 20/20 Adver. Inc., 674 F. Supp. 671, 680 (D. Minn. 1987).

58. The court's conclusion that each of the Four Seasons Designs is the result of copying, rather than of independent creation, is strengthened by the sheer number of the designs in question. It is unlikely that the substantial similarities in six designs, created in a single year by a small group of artists, all of whom were familiar with the Taylor Designs, would be the result of mere coincidence.

59. Although this court has made its own findings and conclusions, the court's conclusion that the Four Seasons Designs are substantially similar to the corresponding Taylor Designs is bolstered by the unanimous findings of the advisory jury.

60. Although this court has made its own findings and conclusions, the court's conclusion that the Four Seasons Designs were made by copying, rather than by independent creation, are bolstered by the unanimous findings of the advisory jury.

61. Four Seasons argues that it is less likely the similarities in the cards resulted from copying, rather than independent creation, because in several instances the same artist created both the Taylor Design and the corresponding Four Seasons Design. Four Seasons relies on Franklin Mint Corp. v. Nat'l Wildlife Art Exchange, Inc., 575 F.2d 62 (3d Cir. 1978), for this

argument. Four Seasons' argument is misplaced. First, the fact that the same artist created the infringing work does not change the basic legal standard for determining copyright infringement. See Fogerty, 510 U.S. at 520 n.5; 841 F. Supp. at 134, supra § 13.02 [B]. Second, Franklin Mint would seem to be of limited application where, as here, the artists in question are capable of employing, and do employ, a wide variety of styles, techniques, moods, and expressions when rendering holiday card designs. Taylor satisfied its burden of proving that the substantial similarities between the Four Seasons Designs and the Taylor Designs were the result of copying, rather than independent creation.

62. Each of the six Four Seasons Designs infringes the copyrights in the corresponding Taylor Designs.

**ORDER FOR JUDGMENT**

63. Defendant Four Seasons Greetings, LLC is adjudged to have infringed plaintiff's Taylor Designs.

64. Defendant, along with its officers, agents, servants, employees and all persons in active concert or participation with any of them, is permanently enjoined from any further copying, manufacture, production, reproduction, publication, display, distribution, promotion, sale or offering for sale of the six Four Seasons designs.

65. Defendant is ordered to deliver to plaintiff all inventory of infringing products in its possession, or subject to its control, for impoundment and destruction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 11, 2003

David S. Doty, Judge
United States District Court