Civ 01-1293 DSD/SRN

RECEIVED
BY MAIL
MAY 11 2005
CLERK US DIST COURT
MINNEAPOLIS MN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 04-1088

| | | |
|---|---|---|
| Taylor Corporation, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Four Seasons Greetings, LLC, | * | |
| | * | |
| Appellant. | * | |

Submitted: December 17, 2004
Filed: April 11, 2005

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges.

RILEY, Circuit Judge.

This appeal is primarily governed by the standard of review. We directly address a challenge to the appropriate standard for reviewing a district court's findings of substantial similarity in copyright law cases. We adopt the standard from the majority of other circuits and review the district court's fact findings concerning substantial similarity for clear error.

In this copyright infringement action, Taylor Corporation (Taylor), a greeting card manufacturer, claims Four Seasons Greetings, LLC (Four Seasons), a competing greeting card company, infringed Taylor's copyrights in six greeting card designs.

SCANNED
MAY 11 2005
U.S. DISTRICT COURT MPLS

Following a bifurcated trial, the district court[1] concluded Taylor owns the copyrights in the six greeting card designs at issue, and Four Seasons's card designs infringe Taylor's copyrights. The district court issued a permanent injunction against Four Seasons, directing Four Seasons to stop copying, selling, or distributing the six greeting card designs. Four Seasons appeals, arguing the district court erred: (1) in holding Four Seasons liable for copyright infringement, and (2) in issuing a permanent injunction. We affirm.

## I. BACKGROUND

This case involves claims of illegal copying of six holiday greeting card designs. Creative Card Company (Creative Card) employed Frank Stockmal (Stockmal), Bernard Granger (Granger), Michael Shelton (Shelton), and Aleta Brunettin (Brunettin) to design greeting cards. While working for Creative Card, these artists created the six card designs disputed in this case: Colored Presents, Ribbon of Flags Around Globe, Three Worlds of Thanks Globe Ornament, Pencil Sketch Farm, Thanksgiving Cart, and Wreath with Verse. Because the artists were employed by Creative Card when the artists created the card designs, Creative Card is considered the author and the original copyright owner of the six designs.[2] At the time Creative Card authored the six card designs, Creative Card was a wholly owned subsidiary of AP&P Manufacturing, Inc. (AP&P).

In 1999, Creative Card's president left Creative Card and formed Four Seasons. Three of Creative Card's artists–Stockmal, Shelton, and Brunettin–resigned from

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[2]Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). An employer is the author when an item is considered a work made for hire. See 17 U.S.C. § 201(b); Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989); see also 17 U.S.C. § 101 (defining a work made for hire as "a work prepared by an employee within the scope of his or her employment").

Creative Card and went to work for Four Seasons. While employed by Four Seasons, Stockmal, Shelton, and Brunettin created six card designs Taylor contends are similar to six card designs the artists and Granger previously created for Creative Card.

AP&P later filed for bankruptcy. In April 2000, AP&P and Taylor entered into an Asset Purchase Agreement (Agreement), in which AP&P agreed to sell certain assets to Taylor, including AP&P's assets "used in the operation of [AP&P's] Business." The Agreement defines "business" as "the business of designing and publishing greeting cards, . . . as currently conducted by the Creative Card division of [AP&P]." AP&P also agreed to transfer to Taylor "[a]ll intellectual property of the Business, including . . . copyrights, . . . artwork, designs and other intangible property of the Business, . . . including without limitation the Intellectual Property listed in Schedule 1.1(d)." Schedule 1.1(d) identifies hundreds of greeting card designs, including the six card designs authored by Creative Card. On April 28, 2000, the United States Bankruptcy Court for the District of Delaware approved the sale of AP&P's assets to Taylor.

In June and August 2001, Taylor registered the six card designs at issue in this case with the United States Copyright Office. The original copyright registrations misidentified Taylor as the author of each card design. In August 2003, Taylor filed supplementary registrations correctly identifying Creative Card as the author of each work. The supplementary registrations listed Taylor as the copyright claimant. The registration form requires the copyright claimant, if different from the author, to give a brief explanation as to how the claimant obtained ownership of the copyright. In response to that direction, each supplementary registration contains the statement "Bill of Sale and Assignment from [AP&P] to Taylor . . . dated May 9, 2000."

Taylor sued Four Seasons for copyright infringement under the 1976 Copyright Act, 17 U.S.C. §§ 101-1332, for "copying, manufacturing, producing, publishing, selling, promoting and/or advertising . . . greeting cards bearing designs . . .

substantially similar to [Taylor's] Works." The district court preliminarily enjoined Four Seasons from further sale or distribution of the six cards in question. This court affirmed the preliminary injunction. Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1041 (8th Cir. 2003) (Taylor I).

Before trial, Four Seasons stipulated it earned a profit of $45,976.95 from sales of the six card designs. Despite Four Seasons's stipulation of damages, Taylor filed a "Notice of Election of Remedies and Withdrawal of Jury Demand," wherein Taylor sought only injunctive relief at trial. The district court bifurcated Taylor's action into two separate trials. First, the parties tried Taylor's infringement claim to the court and to an advisory jury. The advisory jury unanimously found Four Seasons's cards infringed Taylor's copyrights. Second, the parties tried Taylor's claim that it owns the copyrights at issue to the district court, which concluded "[Taylor] is the legal owner of the copyrights pertaining to the [six card designs]." After deciding Four Seasons infringed Taylor's copyrights, the district court entered judgment in favor of Taylor and issued a permanent injunction against Four Seasons, prohibiting Four Seasons "from any further copying, manufacture, production, reproduction, publication, display, distribution, promotion, sale or offering for sale of the six Four Seasons designs."

Four Seasons challenges the district court's judgment, contending the district court erred: (1) in concluding Taylor owns the copyrights in the six card designs; (2) in "failing to identify what constituent elements of the Taylor cards were original, protectable expression that was copied by Four Seasons"; (3) in failing to find Four Seasons's cards were independently created; (4) in granting injunctive relief after Taylor elected not to accept monetary damages; and (5) in depriving Four Seasons of its right to a jury in the ownership phase of the trial.

## II. DISCUSSION

### A. Copyright Infringement

Copyright law grants the copyright owner a limited monopoly to exploit his creation. This limited monopoly "is intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 429 (1984). To prevail on its copyright infringement claim, Taylor must prove "ownership of a valid copyright and copying of original elements of the work." Mulcahy v. Cheetah Learning, LLC, 386 F.3d 849, 852 (8th Cir. 2004).

On appeal, Four Seasons claims Taylor failed to prove copyright infringement. First, Four Seasons argues Taylor failed to prove it owns the copyrights in the six card designs. Second, Four Seasons contends Taylor failed to prove Four Seasons copied any original, protectable elements of Taylor's card designs. Finally, Four Seasons maintains it independently created its card designs.

#### 1. Ownership

Copyrights, like other property rights, may be transferred from the owner to another entity. See 17 U.S.C. § 201(d). The Copyright Act sets forth the requirements of a transfer: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

It is uncontested Creative Card, the author of the card designs, originally owned the copyrights. The parties further agree Creative Card did not execute a writing expressly transferring or assigning its copyrights to AP&P or to Taylor. However, Taylor contends the bankruptcy court's order effected the transfer of

Creative Card's copyrights to Taylor. Accordingly, the question is whether Taylor proved a transfer of copyright ownership "by operation of law."

Section 204(a) of the Copyright Act does not define the phrase "by operation of law," and sparse case law addresses the transfer of copyright "by operation of law." Brooks v. Bates, 781 F. Supp. 202, 205 (S.D.N.Y. 1991). In Brooks, one of the few cases to address the meaning of "by operation of law," the court relied on the late Professor Melville B. Nimmer's renowned copyright treatise to interpret "by operation of law" to mean transfers by bequest, bankruptcy, mortgage foreclosures, and the like. Id. at 205 (citing Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 10.03[A] at 10-42 (1991)). The court then concluded, "[t]he lessons to be drawn from Professor Nimmer are that transfers of copyrights by operation of law are limited in number, and depend upon circumstances which establish the author's express or implied consent." Id. One example of a transfer "by operation of law" is a "transfer[] of ownership pursuant to proceedings in bankruptcy . . . , since in such cases the author, by his overt conduct in filing in bankruptcy, . . . has consented to such a transfer." Id. (quoting supra, § 10.06[A], 10-42). Although the Brooks court found the copyrights in that case had not been transferred by operation of law, the court noted, "[t]his is not a case of a corporate owner of a copyright merging with another or dissolving, so that its copyrights passed to the shareholders by operation of law." Id. at 206.

Other courts similarly have held corporate mergers and dissolutions transfer copyright ownership "by operation of law." See Lone Ranger Television, Inc. v. Program Radio Corp., 740 F.2d 718, 721 (9th Cir. 1984) (holding where copyright was transferred to corporation, corporation merged into another corporation, and surviving corporation then transferred copyright to subsidiary, subsidiary could maintain infringement action, because with every change in ownership parties recorded transfers); Fantasy, Inc. v. Fogerty, 664 F. Supp. 1345, 1356 (N.D. Cal. 1987) (holding where assets were transferred from dissolving corporation to its sole

shareholder, sole shareholder succeeded to ownership of copyright by operation of law), aff'd, 984 F.2d 1524 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

We conclude the bankruptcy court's order approving AP&P's and Taylor's Agreement constituted a transfer of the copyrights "by operation of law." The Agreement explicitly states AP&P sold to Taylor "the business of designing and publishing greeting cards, . . . as currently conducted by the Creative Card division." The Agreement further transferred from AP&P to Taylor "[a]ll intellectual property of the Business," and Schedule 1.1(d) identifies the card designs at issue in this case. We agree with the district court that the bankruptcy court's April 28, 2000 order approving AP&P's and Taylor's Agreement vested Taylor with ownership in the copyrights in Creative Card's card designs.[3]

**2. Copying**

The second element required to show copyright infringement is copying. Taylor presented no direct evidence of copying. In the absence of direct evidence, Taylor may establish copying by proving: (1) Four Seasons had access to the copyrighted card designs; and (2) substantial similarity between the card designs. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). Four Seasons does not contest it had access to Taylor's designs. However, Four Seasons vigorously maintains any similarities between its and Taylor's card designs are not sufficiently substantial to trigger liability.

---

[3]Indeed, if we were to conclude otherwise, no entity could pursue this infringement action. Creative Card cannot be named as a plaintiff here, and can no longer transfer the copyrights to Taylor, because in 2001, Creative Card was liquidated and ceased to exist as a corporate entity.

**a. Standard of Review**

Four Seasons's "substantial similarity" argument raises a threshold, and potentially controlling, issue regarding our standard of review. In Taylor I, we assumed the district court's findings of substantial similarity were subject to review for clear error. Taylor I, 315 F.3d at 1043 ("The District Court's findings of substantial similarity between all six original cards and their allegedly infringing counterparts were not clearly erroneous."). We now address Four Season's challenge to the appropriate standard for reviewing a district court's determination of substantial similarity in copyright law cases.

Four Seasons cites a line of cases from the Second Circuit for the proposition that appellate review of "substantial similarity" determinations in copyright law cases is de novo. In Boisson and Folio Impressions, the Second Circuit rejected a clearly erroneous standard of review in favor of a de novo standard of review. Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001); Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 766 (2d Cir. 1991). The Second Circuit reasoned it could review de novo a district court's finding of substantial similarity, "because what is required is only a visual comparison of the works, rather than credibility, which we are in as good a position to decide as was the district court." Folio Impressions, 937 F.2d at 766; see Boisson, 273 F.3d at 272 (applying de novo review, "because credibility is not at stake and all that is required is a visual comparison of the products–a task we may perform as well as the district court"). However, in Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001), the Second Circuit recognized it has "never decided the standard of review applicable to *jury* findings of substantial similarity where credibility is not at issue." The Second Circuit thus concluded, "[a]lthough a jury's factual findings are subject to 'independent review' where such review is constitutionally required, we think that in copyright cases the Constitution dictates a more deferential standard." Id. at 111 (citation omitted).

We are unpersuaded by the Second Circuit's reasoning supporting de novo review of findings of substantial similarity in copyright law cases. Federal Rule of Civil Procedure 52(a) specifically states "[i]n all actions tried upon the facts without a jury *or with an advisory jury*, the court shall find the facts." (emphasis added). Rule 52(a) then describes our appellate review: "Findings of fact, whether based on oral *or documentary evidence*, shall not be set aside unless clearly erroneous." (emphasis added). Thus, neither an advisory jury nor findings of fact resting solely on documentary evidence changes this rule of deference to the district court's fact findings. See Anderson v. Bessemer City, 470 U.S. 564, 574-75 (1985). Rule 52(a) requires "even greater deference to the trial court's findings" when those findings are based on witness credibility determinations. Id. at 575. The function of appellate courts is not to decide fact issues de novo, and as a reviewing court, we may not reverse the district court's fact findings "simply because [we are] convinced [we] would have decided the case differently." Id. at 573.

The majority of circuit courts adhere to a clearly erroneous review of findings of "substantial similarity" in copyright law cases. See, e.g., Hennon v. Kirkland's, Inc., No. 94-2595, 1995 WL 490266, at *3 (4th Cir. Aug. 17, 1995) (unpublished) (per curiam) (stating "[t]he district court's determination of similarity of expression depended on its factual analysis of the figurines, and we review for clear error the district court's factual findings for substantial similarity"); Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 506-07 & n.1 (7th Cir. 1994) (saying, "[i]n this circuit, when reviewing the products in issue for substantial similarity, we permit 'side-by-side' comparison, and an 'ocular comparison,' of the works being analyzed for similarity, but follow the clearly erroneous standard in reviewing the district court's conclusions." (citations omitted)); Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 532-33 (5th Cir. 1994) (holding issue of substantial similarity is a finding of fact and "consequently [is] reviewed under the clearly erroneous standard"); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 206 (9th Cir. 1988) (holding issue of substantial similarity is "finding[] of fact reviewable for clear

error"); Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1233 & n.25 (3d Cir. 1986) (applying clearly erroneous standard of review to question of substantial similarity); Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 825 & n.4 (11th Cir. 1982) (same).

We find additional support for our conclusion in case law construing substantial similarity in actions involving alleged patent infringement. See Sony Corp. of Am., 464 U.S. at 439 (stating "it is appropriate to refer" to patent law in copyright law cases, "because of the historic kinship between patent law and copyright law"). In Horton Manufacturing Co. v. Tol-O-Matic, Inc., 973 F.2d 649 (8th Cir. 1992), a patent holder filed suit against an alleged infringer, asserting breach of a settlement agreement. According to the settlement agreement, the alleged infringer agreed to cease producing any products "with a configuration that includes any of [a number] of identifiers listed . . . on Attachment 1 hereto." Id. at 650 (alterations in original). The district court found the alleged infringer had violated the settlement agreement by manufacturing products that were substantially similar to those made by the patent holder. Id. On appeal, we reviewed the district court's finding of substantial similarity "under the clearly erroneous standard[,]" because a "district court's determination of substantial similarity is a finding of fact." Id. at 651.

Having determined the appropriate standard of review, we next consider whether the district court clearly erred in finding Taylor's and Four Seasons's card designs are substantially similar.

**b. Substantial Similarity**

The Eighth Circuit applies a two-step analysis–an extrinsic test and an intrinsic test–to determine substantial similarity:

> First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression.

Hartman, 833 F.2d at 120 (citations omitted); see also Taylor I, 315 F.3d at 1043. The district court determined both steps of the substantial similarity test are satisfied in this case. First, the district court concluded the extrinsic test is satisfied because the card designs share similar ideas. Second, the district court determined the intrinsic test is satisfied because the card designs share similarities of expression.

Four Seasons does not challenge the district court's application of the "extrinsic" step of the substantial similarity analysis. Four Seasons generally admits the cards share the same "general thematic and technical levels–e.g., similar holiday themes, paper stock and printing techniques." Four Seasons does, however, challenge the district court's application of the "intrinsic" step of the substantial similarity analysis.

Four Seasons first argues the district court failed to distinguish between protectable and unprotectable elements of Taylor's card designs. Four Seasons advanced this same argument in Taylor I, and our previous panel rejected Four Seasons's argument. See Taylor I, 315 F.3d at 1043 (declining to require district court to filter out "unprotectable elements" of the card designs). We continue to reject Four Seasons's argument, because it is improper to perform analytic dissection, or "filtering," when conducting the "intrinsic" step. See Dr. Seuss Enters. v. Penguin Books USA, Inc., 109 F.3d 1394, 1399 (9th Cir. 1997) (holding "analytic dissection is not appropriate when conducting the subjective or 'intrinsic test'" to determine whether works are substantially similar in copyright infringement cases). In applying the "intrinsic" step, the district court correctly asked whether the ordinary, reasonable observer would find the works, taken as a whole, to be substantially similar. See

Hartman, 833 F.2d at 120 (stating "similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression"); see also Taylor I, 315 F.3d at 1043.

Next, Four Seasons contends any similarities between the card designs "are both qualitatively and quantitatively insubstantial." Although Four Seasons points to various differences in detail in each of the card designs, "a finding of substantial similarity is not precluded where differences in detail do little to lessen a viewer's overwhelming impression that the defendant's products are appropriations." Yurman Design, 262 F.3d at 111 (citation omitted). The district court engaged in lengthy side-by-side comparisons of Taylor's and Four Seasons's card designs, and noted numerous similarities of expression, including the objects depicted, design, proportions used, colors, and use of lettering. We do not dispute those similarities on appeal. The record bears support for the district court's findings that Four Seasons's card designs share a similarity of expression with the corresponding Taylor card designs, which findings are consistent with the advisory jury's unanimous findings. Therefore, we hold the district court's findings of substantial similarity are not clearly erroneous.

### c. Independent Creation

"By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000). Then, "[t]he burden shifts to the defendant to rebut that presumption through proof of independent creation." Id. Four Seasons presented testimony from each artist explaining how they created the card designs. The artists also identified the source material they used in creating the card designs while employed by Four Seasons. The district court and the advisory jury evaluated all of this evidence, including the credibility of the witnesses, and found Four Seasons copied Taylor's card designs. Relying in significant measure on credibility determinations, which we are ill-disposed to disturb on appeal, the district court and

the advisory jury found insufficient proof of "independent creation." See Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir. 1996) (stating an appellate court does "not weigh, evaluate, or consider the credibility of the evidence"). These findings are supported by the record and are not clearly erroneous.

**B. Permanent Injunction**

"We review a district court's issuance of a permanent injunction for an abuse of discretion." Wigg v. Sioux Falls Sch. Dist. 49-5, 382 F.3d 807, 812 (8th Cir. 2004). An abuse of discretion occurs when the district court bases its decision on an erroneous application of the law or a clearly erroneous finding of fact. Id.

The Copyright Act specifically authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To determine whether permanent injunctive relief is warranted, we balance three factors: (1) the threat of irreparable harm to the moving party; (2) the balance of harm between this harm and the harm suffered by the nonmoving party if the injunction is granted; and (3) the public interest. See Bank One v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999) (adapting generally the preliminary injunction factors announced in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981), to review a permanent injunction).

Four Seasons contends injunctive relief is not warranted in this case, because "[b]y having 'elected' not to take damages in an uncontested amount, Taylor has conceded that it has suffered no damage and that its legal claim is a nullity." We find this argument to be wholly without merit. Taylor never conceded it suffered no damage. Rather, "Taylor chose to streamline its case." Therefore, we conclude a valid legal remedy remained available to Taylor.

Because Taylor had a legal remedy available to it, i.e., uncontested damages in the amount of $45,976.95, the question then becomes whether Taylor was entitled

to seek purely equitable relief in the form of a permanent injunction. It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992). However, in copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir. 2004); see also Nat'l Football League v. Primetime 24 Joint Venture, No. 98 Civ. 3778, 1999 WL 760130, at *4 (S.D.N.Y. Sept. 27, 1999) (where an infringer is likely to continue to infringe, "the failure to issue a final injunction will ordinarily be tantamount to the creation of a compulsory license[, which] is not . . . a desirable practice or consistent with the objectives of the Copyright Act"). Taylor certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right. We therefore hold Taylor was entitled to seek only injunctive relief, despite the availability of uncontested damages.

Four Seasons next argues the permanent injunction disserves the public interest, because the injunction harms Four Seasons's "interest in pursuing its business" and makes it "impossible for these artists to continue in the greeting card business." The harm to Four Seasons and the artists is minimal, because Four Seasons may continue to sell other card designs in its portfolio, and the artists are free to create innovative card designs. Injunctions regularly are issued pursuant to the mandate of section 502, because the "public interest is the interest in upholding copyright protections." Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc., 994 F.2d 1476, 1499 (10th Cir. 1993). "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254-55 (3d Cir. 1983) (quoting Klitzner Indus., Inc. v. H.K. James & Co., 535 F. Supp. 1249, 1259-60 (E.D. Pa. 1982)). We

believe the permanent injunction in this case will not harm the public interest, but rather, serve it.

C. **Jury Trial**

Finally, Four Seasons contends the district court violated Four Seasons's Seventh Amendment right to a jury trial by erroneously "depriv[ing] Four Seasons of its constitutional right to have the jury decide disputed factual issues in both the liability and ownership phase of this case." "Whether a party has a right to trial by jury in federal court is a question of law subject to de novo review." Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 374 (8th Cir. 1999).

The Seventh Amendment preserves, "[i]n Suits at common law, . . . the right of trial by jury." U.S. Const. amend. VII. The Supreme Court has established a two-prong test for determining whether a party enforcing a statutory right is entitled to a jury trial under the Seventh Amendment. Tull v. United States, 481 U.S. 412, 417-18 (1987). First, we must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Id. (citations omitted). The Supreme Court has stressed the second inquiry of this test is the more important of the two. See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990).

In Cass County Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 642-44 (8th Cir. 1996), we applied the Tull two-prong test and held (1) copyright infringement is a legal action; (2) statutory damages for copyright infringement are a legal remedy; and (3) "either party in a copyright infringement suit is entitled under the Seventh Amendment to a jury trial on demand." However, Cass County Music involved a claim for statutory damages under the Copyright Act. Id. at 644. In the instant case, Taylor forfeited its claim for damages and instead sought only injunctive relief.

Therefore, we conclude the holding in Cass County Music does not control the instant case.

We find the Federal Circuit's decision in Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331 (Fed. Cir. 2001) persuasive. In Tegal, the patent holder sued the defendant for patent infringement, seeking injunctive relief and damages, and requested a jury trial. Id. at 1338. The defendant asserted affirmative defenses, including invalidity, but the defendant did not file a counterclaim. Id. Six days before trial, the plaintiff dropped its claim for damages, believing it would lose its right to a jury trial. Id. The case proceeded to trial without a jury, and the district court issued a permanent injunction against the defendant. Id.

On appeal, the Federal Circuit framed the jury trial issue as whether a defendant has a right to a jury trial where the plaintiff seeks only an injunction, and the defendant asserts only affirmative defenses and no counterclaims. Id. at 1339. In reaching its decision that the defendant has no right to a jury trial under such circumstances, the Federal Circuit applied the Tull two-prong jury trial test. Analyzing the first prong, the Federal Circuit explained:

> "[i]n eighteenth-century England, allegations of patent infringement could be raised in both actions at law and suits in equity," and . . . the choice was the patentee's and depended on the type of remedy sought. If the patentee sought an injunction and an accounting, the patentee went to a court of equity. If, however, the patentee sought only damages, a court of law was used.

Tegal, 257 F.3d at 1340 (quoting In re Lockwood, 50 F.3d 966, 976 (Fed. Cir. 1995), vacated and remanded, Am. Airlines, Inc. v. Lockwood, 515 U.S. 1182 (1995)). Addressing the second prong of the Tull test, the Federal Circuit recognized, "Tegal sought only an injunction, a purely equitable remedy." Id. at 1341.

The Federal Circuit concluded neither party had a right to a jury, holding "a defendant, asserting only affirmative defenses and no counterclaims, does not have a right to a jury trial in a patent infringement suit if the only remedy sought by the plaintiff-patentee is an injunction." Id. We agree with the Federal Circuit's holding in Tegal. Recognizing the "historic kinship between patent law and copyright law," Sony Corp. of Am., 464 U.S. at 439, we apply the Federal Circuit's holding in Tegal to this copyright action. Therefore, Four Seasons was not entitled to a jury trial on Taylor's action seeking only a permanent injunction.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's decision in all respects.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans